1

2

3

4                          UNITED STATES DISTRICT COURT

5                               DISTRICT OF NEVADA

6                                      * * *

7    JOSEPH GALIPO; CAROL WADE; AND )
     ASHLEY GALIPO, Individually, and as )
8    Administrator of the Estate of Joseph )
     Galipo,                             )
9                                        )        2:06-CV-00895-PMP-RJJ
                     Plaintiffs,         )
10                                       )        O R D E R
      v.                                 )
11                                       )
     CITY OF LAS VEGAS; CITY OF LAS )
12   VEGAS POLICE DEPARTMENT;            )
     STATE OF NEVADA; NEVADA             )
13   HIGHWAY PATROL; OFFICER             )
     FARRINGTON; and OFFICER YANNIS, )
14                                       )
                     Defendants.         )
15   _____)

16           Presently before the Court is Defendants Las Vegas Metropolitan Police

17   Department, Officer Farrington and Officer Yannis' Motion for Summary Judgment (Doc.

18   #14), filed on January 9, 2007.  Plaintiffs Joseph Galipo, Carol Wade Galipo, and Ashley

19   Galipo filed Plaintiffs' Opposition to Summary Judgment Motion and Request to Continue

20   Hearing Pursuant to FRCP 56(f) (Doc. #17, #18) on February 12, 2007.  Defendants filed a

21   Reply (Doc. #19) on February 27, 2007.

22   I.      BACKGROUND

23           On July 21, 2004, California Highway Patrol officers engaged in a high speed

24   pursuit of Plaintiff Joseph Galipo ("Galipo") on Interstate 15.  (Compl. at 3; Mot. for

25   Summ. J. [Doc. #14], Aff. of Charles Yannis ["Yannis Aff."] at 2.)  As the pursuit crossed

26   from California into Nevada, Las Vegas Metropolitan Police Department ("LVMPD")

1   Officers Farrington and Yannis received a request for assistance in the pursuit.  (Yannis

2   Aff. at 1-2.)  California Highway Patrol informed Yannis and Farrington that Galipo was

3   driving recklessly at speeds exceeding 130 miles per hour.  (Id. at 2.)  In addition to

4   Farrington and Yannis' participation, a police helicopter was involved in the pursuit and

5   from its vantage it could be seen that Galipo was traveling at a high rate of speed without a

6   seatbelt and with the car's "T Tops" down.  (Compl. at 3-4; Yannis Aff. at 2.)  Galipo

7   exited the freeway at Jean, Nevada and turned north onto Las Vegas Boulevard.  (Yannis

8   Aff. at 2.)  The helicopter unit reported to Farrington and Yannis that Galipo was traveling

9   between 120 and 130 miles per hour.  (Id. at 2.)

10          Farrington and Yannis placed spike sticks in the road ahead of Galipo,

11   approximately two miles from the intersection of St. Rose and Las Vegas Boulevard.

12   (Compl. at 4; Yannis Aff. at 2.)  Officer Yannis avers he did so out of a concern Galipo

13   would cause an accident because he was traveling at such a high rate of speed and was

14   approaching a traffic signal controlled intersection at which the noon-time traffic normally

15   was heavy.  (Yannis Aff. at 2.)  Additionally, the helicopter unit reported to Yannis that

16   Galipo already had almost caused a head-on collision with another vehicle.  (Id. at 3.)

17   Yannis avers he and Farrington pulled to the side of the road about two miles from this

18   intersection and turned on their vehicles' emergency lights.  (Id.)  Yannis states he and

19   Farrington placed tire spikes in the road in an area visible to oncoming traffic and with

20   adequate time for Galipo to see the spikes and stop.  (Id.)

21          Galipo swerved in an attempt to avoid the tire spikes and/or the officers who

22   were in the road setting up the tire spikes.  (Compl. at 4; Yannis Aff at 3.)  Galipo lost

23   control of his car, the car rolled over, and he was ejected from the vehicle sustaining fatal

24   injuries.  (Compl. at 4; Yannis Aff. at 3.)

25   ///

26   ///

2

1    Plaintiffs brought suit in this Court against Defendants City of Las Vegas,[1] the

2   State of Nevada, Nevada Highway Patrol, Las Vegas Metropolitan Police Department

3   ("LVMPD"), and Officers Farrington and Yannis.  Plaintiffs allege municipal liability for

4   the unconstitutional use of excessive force (count one), fourth amendment violations for the

5   use of excessive force (count two), civil rights conspiracy (count three), and fourteenth

6   amendment violations for intentional interference with the familial relationship (count

7   four).

8    Defendants LVMPD, Farrington, and Yannis move for summary judgment.

9   Defendants Farrington and Yannis argue no fourth amendment seizure occurred because

10  Galipo avoided the tire spikes and thus police action did not cause Galipo to stop.

11  Additionally, Defendants argue if a seizure did occur, their use of the tire spikes was a

12  reasonable use of force given the circumstances of Galipo's reckless driving combined with

13  his proximity to a busy intersection.  Alternatively, Farrington and Yannis argue that even if

14  a constitutional violation occurred, they are entitled to qualified immunity because such a

15  violation was not clearly established at the time Defendants acted.  Defendants also argue

16  Plaintiffs' civil conspiracy claim sets forth no facts supporting the claim and does not

17  explain what Defendants allegedly "covered up."

18   Defendant LVMPD argues it cannot be liable for a custom or practice unless

19  Plaintiffs first establish a constitutional violation.  Defendant LVMPD joins in Farrington

20  and Yannis' arguments that no constitutional violation occurred and therefore there was

21  nothing for LVMPD to "cover up."  Additionally, Defendant LVMPD contends Plaintiffs

22  have failed to identify any other instances in which LVMPD exhibited a policy of refusing

23  to investigate or document instances of excessive force or failing to supervise or discipline

24  officers who use excessive force.

25   _____

26   [1] Defendant City of Las Vegas has been dismissed from this action.  (Order [Doc. #12].)

1    Plaintiffs respond there are factual disputes about whether Galipo's tires struck

2    the spikes and the timing and placement of the spikes in the road.  For example, Plaintiffs

3    suggest the traffic report stated the officers were setting up the tire spikes seconds before

4    the crash and Galipo therefore did not have time to stop to avoid the spikes and/or the

5    officers still in the roadway.  Plaintiffs argue the law regarding setting up dangerous or

6    deadly roadblocks was clearly established at the time of the incident.  Plaintiffs argue the

7    motion is premature and request the opportunity to conduct further discovery, such as the

8    depositions of Farrington, Yannis, and the individuals who investigated the crash, before

9    the Court rules on summary judgment.

10   **II.      LEGAL STANDARD**

11   Summary judgment is appropriate if "the pleadings, depositions, answers to

12   interrogatories, and admissions on file, together with the affidavits, if any" demonstrate

13   "there is no genuine issue as to any material fact and . . . the moving party is entitled to a

14   judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law defines which

15   facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All

16   justifiable inferences must be viewed in the light most favorable to the non-moving party.

17   County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

18   The party moving for summary judgment bears the initial burden of showing the

19   absence of a genuine issue of material fact.  Fairbank v. Wunderman Cato Johnson, 212

20   F.3d 528, 531 (9th Cir. 2000).  The burden then shifts to the non-moving party to go beyond

21   the pleadings and set forth specific facts demonstrating there is a genuine issue for trial.

22   Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).

23   ///

24   ///

25   ///

26   ///

4

1  **III.      DISCUSSION**

2  **A.  Counts 1 and 2 - 42 U.S.C. § 1983**

3      In counts one and two of the Complaint, Plaintiffs allege Defendants Farrington,

4  Yannis, and LVMPD violated Galipo's Fourth Amendment rights by unreasonably using

5  deadly force against him.[2]  Title 42 U.S.C. § 1983 provides that "[e]very person who, under

6  color of [law], subjects, or causes to be subjected, any citizen of the United States . . . to the

7  deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

8  shall be liable to the party injured in an action at law . . . or other proper proceeding for

9  redress."  Consequently, to establish liability under § 1983, a plaintiff must allege the

10  violation of a right secured by the Constitution and laws of the United States, and must

11  show that the alleged deprivation was committed by a person acting under color of state

12  law.  Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003).  To establish municipal

13  liability, the plaintiff must establish both a constitutional deprivation and the existence of a

14  municipal custom or policy that caused the deprivation.  Munger v. City of Glasgow Police

15  Dep't, 227 F.3d 1082, 1087 (9th Cir. 2000) (citing Monell v. Dep't of Soc. Servs., 436 U.S.

16  658, 690-91 (1978)); Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000).

17      To allay the "risk that fear of personal monetary liability and harassing litigation

18  will unduly inhibit officials in the discharge of their duties," government officials

19  performing discretionary functions may be entitled to qualified immunity for claims made

20  under § 1983.  Anderson v. Creighton, 483 U.S. 635, 638 (1987).  Qualified immunity

21  protects "all but the plainly incompetent or those who knowingly violate the law."  Malley

22  v. Briggs, 475 U.S. 335, 341 (1986).

23  _____

24     [2] Plaintiff Ashley Galipo brings claims as Administrator of the decedent's estate.  She therefore has standing to pursue the decedent's Fourth Amendment claims.  See Moreland v. Las Vegas Metro.

25  Police Dep't, 159 F.3d 365, 369 (9th Cir. 1998) (holding family members may bring decedent's § 1983 claim for Fourth Amendment violations if state law permits survival actions); Nev. Rev. Stat.

26  § 41.100(3) (permitting decedent's executor or administrator to maintain decedent's cause of action).

In ruling on a qualified immunity defense, a court first must consider whether the facts alleged show the defendants' conduct violated a constitutional right.  Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).  In making this determination, the court views the facts alleged in the light most favorable to the party asserting the injury.  Id.  If the plaintiff has alleged a deprivation of a constitutional right, the court then must determine whether that right was clearly established.  Id.  A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Wilkins v. City of Oakland, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).  The court should make this second inquiry "in light of the specific context of the case, not as a broad general proposition."  Saucier, 533 U.S. at 200.  The plaintiff bears the burden of showing that the right at issue was clearly established.  Sorrels, 290 F.3d at 969.

Courts analyze claims that law enforcement officers have used excessive force in the course of an arrest under the Fourth Amendment to the United States Constitution.  Smith v. City of Hemet, 394 F.3d 689, 700 (9th Cir. 2005) (citing Graham v. Connor, 490 U.S. 386 (1989); Ward v. City of San Jose, 967 F.2d 280 (9th Cir.1992) (as amended)).  Determining whether an officer used excessive force involves balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Graham v. Connor, 490 U.S. 386, 396-97 (1989) (quotations omitted).  This is a fact-intensive, case-by-case inquiry viewed from the perspective of a reasonable officer on the scene which considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. at 396.  The reasonableness inquiry takes into account "the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation."  Id. at

396-97.  The reasonableness standard is objective and does not inquire into an officer's intent or motive.  Id. at 397.

The United States Supreme Court recently held in a similar case that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death."  Scott v. Harris, No. 05-1631, Slip. Op. at 11, 550 U.S. ---- (2007).  In Scott, Georgia police attempted to pull over Victor Harris ("Harris") for speeding.  Id. at 1.  Rather than comply, Harris fled at speeds exceeding 85 miles per hour down a two-lane road.  Id.  Officer Timothy Scott ("Scott") joined the chase. Id.  Scott ultimately bumped his patrol car into the rear of Harris' vehicle, causing Harris to lose control and crash.  Id. at 2.  Harris suffered serious injuries which rendered him a quadriplegic.  Id.

Harris filed suit pursuant to 42 U.S.C. § 1983.  Id.  Scott moved for summary judgment, asserting he was entitled to qualified immunity.  Id.  On appeal, the Supreme Court ruled Scott's conduct was objectively reasonable and therefore did not constitute a Fourth Amendment violation even though he used potentially deadly force to end the high-speed pursuit.  Id. at 8-11.  The Supreme Court noted that in balancing the various interests at stake, it is appropriate to consider both the number of lives at stake and the "relative culpability" of those individuals.  Id. at 11.  Harris placed himself and the public in danger when he engaged in the reckless, high speed flight whereas members of the public whom he endangered during that flight were innocent.  Id.  The Supreme Court specifically rejected the notion that the police could protect the public by ceasing the pursuit because calling off the chase does not ensure a fleeing suspect will cease driving recklessly and because it creates "perverse incentives" for individuals to flee and drive recklessly to evade arrest.  Id. at 12-13.  The Court therefore found no reasonable jury could have found Scott's conduct was objectively unreasonable and granted summary judgment in Scott's favor.  Id. at 13.

Plaintiffs do not dispute Galipo fled from police and was approaching a busy intersection at a high rate of speed.  However, Plaintiffs request the opportunity to conduct discovery before the Court rules on the summary judgment motion pursuant to Federal Rule of Civil Procedure 56(f).[3]  Plaintiffs contend issues of fact remain, such as whether the tire spikes actually struck Galipo's tires and whether an officer still was in the roadway at the time Galipo swerved.  The Court will assume the tire spikes struck Galipo's tires such that the officers "seized" Galipo for Fourth Amendment purposes.  Additionally, the Court will assume the officers set up the tire spikes only seconds before Galipo approached in such a manner that Galipo could not stop in time and that an officer still was in the roadway when Galipo swerved to avoid the spikes, the officer, or both.

Assuming these facts, no reasonable jury could find Officers Farrington and Yannis' conduct was objectively unreasonable and thus no Fourth Amendment violation occurred.  Weighing the number of lives at stake as well as the relative culpability, the officers' decision to subject Galipo to potentially deadly force to prevent him from endangering innocent lives of members of the public at the upcoming intersection is objectively reasonable as a matter of law.  Plaintiffs contend that if the officers were going to attempt to seize Galipo, such a seizure is unreasonable unless they gave him adequate time see the tire spikes and stop before striking them.  However, the <u>Scott</u> Court did not require the officer to give the suspect an opportunity to appreciate the force about to be used against him and to respond before the officer bumped his car.  Galipo refused to stop and was approaching a busy intersection at high speed, thus placing at risk innocent lives.  Plaintiffs do not contend further discovery would show Galipo was not driving recklessly or

---

[3]  Plaintiffs include the required Rule 56(f) declaration setting forth the need to conduct discovery and identifying the requested discovery as the depositions of Officers Farrington and Yannis as well as the officers who investigated the crash.  The Court will disregard the proffered Rule 56(f) affidavit of Dale Galipo, however, as he is neither a party nor an attorney in this matter.

that he was not endangering the public.  Rather, Plaintiffs affirmatively pled Galipo was driving at a high rate of speed and that the officers knew he was speeding when they decided to put down the tire spikes.

The officers' attempt to stop Galipo's reckless, high-speed flight that threatened the lives of innocent members of the public does not violate the Fourth Amendment, even though they risked using deadly force against Galipo.  Because the officers did not violate Galipo's Fourth Amendment rights, they are entitled to qualified immunity.  Additionally, because no Fourth Amendment violation occurred, Defendant LVMPD is not liable under § 1983 either.  The Court therefore will grant Defendants' motion for summary judgment on counts 1 and 2.

**B.  Count 3 - 42 U.S.C. § 1985**

In count three of the Complaint, Plaintiffs allege Defendants Farrington and Yannis conspired "to cover-up their acts of brutality and cover-up the true cause of the decedent's catastrophic injuries and death."  (Compl. at 11.)  Defendants move to dismiss this claim, arguing Plaintiffs' civil conspiracy claim sets forth no facts supporting the claim and does not explain what Defendants allegedly "covered up."  Defendants argue that because they agree with Plaintiffs' statement of how the accident occurred, there is no basis to allege a "cover up."  Plaintiffs do not respond to this argument either substantively or in their request for further discovery.

Pursuant to Local Rule 7.2(d), failure to file points and authorities in opposition to a motion constitutes consent to granting the motion.  Plaintiffs failed to respond to Defendants' arguments regarding the civil conspiracy claim and thus they concede Defendants are entitled to summary judgment on the claim.  Further, the claim suffers from two substantive defects.  First, no constitutional violation occurred, and thus Defendants could not have conspired to cover up their alleged violation of Galipo's Fourth Amendment rights.  Second, Defendants have agreed with Plaintiffs' allegations regarding how Galipo

1    died and the Complaint does not explain in what manner Defendants' version of events

2    differ or what facts Defendants have attempted to conceal.  Accordingly, the Court will

3    grant Defendants' motion for summary judgment as to count three.

4              **D.  Count 4 - Fourteenth Amendment**

5              In count four of the Complaint, Plaintiffs allege that by violating Galipo's Fourth

6    Amendment rights, Defendants also violated Plaintiffs' Fourteenth Amendment rights by

7    interfering in their familial relationship with Galipo.  Defendants argue that because no

8    constitutional violation occurred, they are entitled to summary judgment on this claim.

9              The parents and children of a person killed by law enforcement officers may

10   assert a substantive due process claim under the Fourteenth Amendment based on the

11   deprivation of their liberty interest arising out of their relationship with the decedent.[4]  See

12   Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998).  The

13   plaintiff must allege more than mere negligence to support a due process claim, however.

14   Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  In the context of police pursuit of

15   a fleeing suspect in a high speed chase, a plaintiff must establish the officer used excessive

16   force with the intent to harm the suspect physically or to worsen his legal plight to establish

17   § 1983 liability.  County of Sacramento v. Lewis, 523 U.S. 833, 854 (1998).  If the officer's

18   actions were objectively reasonable, "it follows that his conduct d[oes] not offend the more

19   stringent standard applicable to substantive due process claims."  Moreland, 159 F.3d at 371

20   n.4.

21   ///

22   ///

23

24   _____

25   [4]  The Complaint alleges Ashley Galipo is the decedent's daughter and Joseph Galipo's
     declaration identifies him as the decedent's father. (Compl. at 2; Pls.' Opp'n, Decl. of Joseph Galipo.)
     Accordingly, they have standing to assert this claim. The Complaint does not allege the relationship

26   between Plaintiff Carol Wade and the decedent.

1    Because Defendants' conduct was objectively reasonable, Defendants also are

2 entitled to summary judgment on Plaintiffs' Fourteenth Amendment substantive due process

3 claims.  The Court therefore will grant Defendants' motion for summary judgment on count

4 four.

5 **IV.      CONCLUSION**

6    IT IS THEREFORE ORDERED that Defendants Las Vegas Metropolitan Police

7 Department, Officer Farrington and Officer Yannis' Motion for Summary Judgment (Doc.

8 #14) is hereby GRANTED.  Plaintiffs' Complaint is hereby dismissed with prejudice as to

9 Defendants Farrington, Yannis and LVMPD.

10

11 DATED:   May 8, 2007.

12

13 _____

14                 PHILIP M. PRO
                United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26